1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12   STAGE NINE DESIGN, LLC,            No. 2:21-cv-00722-WBS-AC

13              Plaintiff,

14        v.                            ORDER RE: DEFENDANT
                                        GLOBALTRANZ'S MOTION TO
15   ROCK-IT CARGO USA, LLC; VALUED     DISMISS
     FREIGHT SERVICES, LLC;
16   GLOBALTRANZ ENTERPRISES, LLC;
     SPN CARGO, INC.; and DOES 1 to
17   20, inclusive,

18              Defendants.

19

20                          ----oo0oo----

21        Plaintiff Stage Nine Design, LLC ("Stage Nine") brought

22   this action against defendants Rock-It Cargo USA, LLC ("Rock-

23   It"), Valued Freight Services, LLC ("Valued Freight"),

24   GlobalTranz Enterprises, LLC ("GlobalTranz"), and SPN Cargo, Inc.

25   ("SPN"), for breach of contract, negligence, and violations of

26   the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C.

27   § 14706.[1]  (See generally GlobalTranz's Notice of Removal, Ex. A

28        [1]    Stage Nine's complaint was created using "Cause of

                                    1

1  ("Compl.") (Docket No. 1-1).)  GlobalTranz now moves to dismiss

2  Stage Nine's claims against it on the ground that this court

3  lacks personal jurisdiction.  (Mot. to Dismiss (Docket No. 21).)

4  I.   Factual Background

5          In April 2020, Stage Nine engaged Rock-It to ship its

6  traveling pop culture museum exhibition (entitled "Hall of

7  Heroes") from West Palm Beach, Florida, to the Springfield Museum

8  in Springfield, Massachusetts.  (Compl. ¶ 3.)  Shortly

9  thereafter, Rock-It subcontracted its obligations under the

10 engagement to Valued Freight, who subsequently subcontracted the

11 shipment to GlobalTranz.  (Compl. ¶ 4.)  On July 8, 2020,

12 GlobalTranz contracted with SPN to operate as a motor carrier for

13 the shipment.  (Id.)

14

15 Action" forms provided by the Judicial Council of California.
   The complaint contains two "Cause of Action" forms--one for

16 breach of contract, and one for negligence--with numbered
   allegations attached to each.  (See Compl. at 14-18, 19-22.) In

17 the thirteenth paragraph of the allegations supporting each cause
   of action, Stage Nine also alleges that defendants are liable for

18 Stage Nine's losses under 49 U.S.C. § 14706.  (See Compl. at 14,
   19.)  The "Cause of Action" for negligence further states:

19 "Additionally, pursuant to 49 U.S.C. § 14706, defendants and each
   of them, by their actions and/or words, were "carriers" within

20 the meaning of the statute, and therefore are liable for
   plaintiff's losses as a matter of law."  (See Compl. at 15.)  The

21 court therefore construes plaintiff's complaint as asserting
   three claims against defendants: (1) breach of contract, (2)

22 negligence, and (3) violations of the Carmack Amendment to the
   Interstate Commerce Act, 49 U.S.C. § 14706.

23         Additionally, the allegations listed in support of
   Stage Nine's second "Cause of Action" for negligence are

24 identical to allegations listed in support of its "Cause of
   Action" for breach of contract.  (Compare Compl. at 19-22 with

25 Compl. at 14-18.)  Any subsequent references to numbered
   allegations in Stage Nine's complaint will therefore correspond

26 with the allegations listed in support of Stage Nine's first
   "Cause of Action," located at pages 14-18 of the complaint.

27

28

                              2

1    On July 10th, SPN picked up the exhibition trailer from
2  West Palm Beach.  (Compl. ¶ 5.)  En route to Massachusetts, the
3  SPN driver, Veljko, stopped at the Kenworth dealer in Riviera
4  Beach, Florida, because he noticed the "check engine" light
5  illuminate on his tractor.  (Id.)  Stage Nine alleges that Veljko
6  left the trailer on the street unattended and unsecured near the
7  dealership as the tractor was being serviced.  (Id.)  Sometime
8  between July 10th and 11th, the trailer was stolen, and still has
9  not been recovered.  (Id.)  Stage Nine alleges the value of the
10  goods lost to be approximately $462,742.  (Id.)

11    Stage Nine and Rock-It's relationship was governed by a
12  2017 written agreement, in which Rock-It agreed to perform
13  transportation brokerage services and logistics assistance on
14  behalf of Stage Nine (the "2017 Agreement").  (Compl. ¶ 1.)
15  (Compl. ¶¶ 1, 17-18.)  Stage Nine claims that Rock-It breached
16  the terms of this agreement by "failing to use its best efforts
17  to select and engage responsible carriers and other
18  transportation intermediaries," failing to "ensure there was
19  adequate insurance without exclusions to protect Stage Nine," and
20  failing to "properly and reasonable supervise and oversee the
21  shipment."  (Compl. ¶ 17.)  Stage Nine further claims that Valued
22  Freight, GlobalTranz, and SPN each breached their respective
23  agreements with Stage Nine, as a third-party beneficiary, for
24  similar reasons as articulated in its claims against Rock-It,
25  (see Compl. ¶¶ 18-20), and that each defendant is strictly liable
26  for Stage Nine's losses under the Carmack Amendment to the
27  Interstate Commerce Act (see Compl. at 15).

28    When it answered Stage Nine's complaint, SPN filed its

3

1  own cross-claim against GlobalTranz.  (See Answer of Defendant

2  SPN Cargo, Inc. and Cross-Claim against Co-Defendant GlobalTranz

3  Enterprises, LLC, at 14-17 ("SPN Cross-Claim") (Docket No. 7).)

4  It is not clear exactly what claims SPN is asserting against

5  GlobalTranz, as the cross-claim only contains factual allegations

6  and does not expressly label or list any claims, but, similar to

7  Stage Nine's complaint, the thrust of SPN's cross-claim appears

8  to be that GlobalTranz breached its contract with SPN, was

9  negligent, and is liable under the Carmack Amendment because it

10  failed to correctly and fully inform SPN of the value of the

11  cargo it asked SPN to transport.  (See id.)

12  II.  Discussion

13          Federal Rule of Civil Procedure 12(b)(2) authorizes

14  dismissal of a plaintiff's claims where the court lacks personal

15  jurisdiction over the defendant.  See Fed. R. Civ. P. 12(b)(2).

16  In opposing a defendant's motion to dismiss for lack of personal

17  jurisdiction, the plaintiff bears the burden of establishing that

18  jurisdiction is proper.  CollegeSource, Inc. v. AcademyOne, Inc.,

19  653 F.3d 1066, 1073 (9th Cir. 2011).  "Where, as here, the

20  defendant's motion is based on written materials rather than an

21  evidentiary hearing, 'the plaintiff need only make a prima facie

22  showing of jurisdictional facts to withstand the motion to

23  dismiss.'"  Id. (quoting Brayton Purcell LLP v. Recordon &

24  Recordon, 606 F.3d 1124, 1127 (9th Cir. 2010)).  A plaintiff may

25  not simply rest on the "bare allegations of [the] complaint," but

26  uncontroverted allegations must be taken as true, and

27  "[c]onflicts between parties over statements contained in

28  affidavits must be resolved in the plaintiff's favor."

1    Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th
2    Cir. 2004).

3            "Personal jurisdiction over a nonresident defendant is
4    tested by a two-part analysis.  First, the exercise of
5    jurisdiction must satisfy the requirements of the applicable
6    state long-arm statute.  Second, the exercise of jurisdiction
7    must comport with federal due process." Chan v. Soc'y
8    Expeditions, Inc., 39 F.3d 1398, 1404-05 (9th Cir. 1994).
9    California's long-arm statute allows courts to "exercise
10   jurisdiction on any basis not inconsistent with the Constitution
11   of [California] or of the United States."  Cal. Code Civ. Proc.
12   § 410.10.  This provision allows courts to exercise jurisdiction
13   to the limits of the Due Process Clause of the U.S. Constitution.
14   See Mattel, Inc. v. Greiner & Hausser GmbH, 354 F.3d 857, 863
15   (9th Cir. 2003).  Thus, the governing standard here is whether
16   exercising personal jurisdiction over GlobalTranz would comport
17   with the limits of the Due Process Clause of the 14th Amendment.

18           "The Due Process Clause protects an individual's
19   liberty interest in not being subject to the binding judgments of
20   a forum with which he has established no meaningful 'contacts,
21   ties, or relations.'"  Burger King Corp. v. Rudzewicz, 471 U.S.
22   462, 471-72 (1985) (quoting Int'l Shoe Co. v. Washington, 326
23   U.S. 310, 319 (1945)).  "[T]he test for personal jurisdiction
24   requires that 'the maintenance of the suit . . . not offend
25   traditional notions of fair play and substantial justice.'"  Ins.
26   Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S.
27   694, 702-03 (1982) (quoting Int'l Shoe, 326 U.S. at 316).
28           The Supreme Court has "recogniz[ed] two types of

1  personal jurisdiction." Ford Motor Co. v. Mont. Eighth Jud.

2  Dist., 141 S. Ct. 1017, 1024 (2021).  First, the court may assert

3  "general" or "all-purpose" jurisdiction over the defendant if the

4  defendant is "essentially at home" in the forum state.  Id.  And

5  second, the court may assert "specific" or "case-linked"

6  jurisdiction if the defendant has purposefully availed itself of

7  the forum state and the plaintiff's claims "arise out of or

8  relate to" the defendant's contacts with the forum.  Id. at 1025

9  (citing Int'l Shoe, 326 U.S. at 319).

10      A.   General Jurisdiction

11      "General jurisdiction, as its name implies, extends to

12  'any and all claims' brought against a defendant."  Id.  "Those

13  claims need not relate to the forum State or the defendant's

14  activity there; they may concern events and conduct anywhere in

15  the world."  Id.  "But that breadth imposes a correlative limit:

16  Only a select 'set of affiliations with a forum' will expose a

17  defendant to such sweeping jurisdiction."  Id. (quoting Daimler,

18  571 U.S. at 137); see also Ranza v. Nike, 793 F.3d 1059, 1069

19  (9th Cir. 2015) ("Because the assertion of judicial authority

20  over a defendant is much broader in the case of general

21  jurisdiction than specific jurisdiction, a plaintiff invoking

22  general jurisdiction must meet an 'exacting standard' for the

23  minimum contacts required.").

24      "In what [the Supreme Court] has called the 'paradigm'

25  case, an individual is subject to general jurisdiction in her

26  place of domicile."  Ford, 141 S. Ct. at 1024 (citing Daimler,

27  571 U.S. at 137).  "And the 'equivalent' forums for a corporation

28  are its place of incorporation and the principal place of

business." Id. (citing Daimler, 571 U.S. at 137).  Outside of
these paradigm cases, however, plaintiffs must meet a "demanding"
standard to show that a foreign corporation's "affiliations with
the State are so continuous and systematic as to render [it]
essentially at home in the forum State." Daimler, 571 U.S. at
139; see also Kipp v. Ski Enter. Corp. of Wisconsin, 783 F.3d
695, 698 (7th Cir. 2015) ("Daimler raised the bar for general
jurisdiction and 'require[s] more than the substantial,
continuous, and systematic course of business that was once
thought to suffice.'").  Accordingly, the Supreme Court has
instructed that only "in an exceptional case" should a court
exercise general jurisdiction over a corporation in a state
other than its place of incorporation or principal place of
business. Id. at 139 n.19; see also Amiri v. DynCorp Int'l,
Inc., No. 14-cv-3333-SC, 2015 WL 166910, at *3 (N.D. Cal. Jan.
13, 2015) (noting that "in the overwhelming majority of cases
there will be no occasion to explore whether" a corporation is at
home in states other than its place of incorporation or principal
place of business).

Additionally, the Supreme Court has noted that the
general jurisdiction inquiry does not "focus solely on the
magnitude of the defendant's in-state contacts," but must also
take into account a "corporation's activities in their entirety,
nationwide and worldwide." Daimler, 571 U.S. at 139 n.20.  The
court's general jurisdiction analysis must therefore involve a
comparative assessment of the defendant's business activities in
different locations.  See Lindora, LLC v. Isagenix Int'l, LLC,
198 F. Supp. 3d 1127, 1137 (S.D. Cal. 2016) (no general

jurisdiction where the plaintiff failed to make a comparative
assessment and instead solely focused on the defendant's
extensive contacts in California); accord Ketayi v. Health
Enrollment Grp., -- F. Supp. 3d --, No. 20-cv-1198-GPC-KSC, 2021
WL 347687, at *5 (S.D. Cal. Feb. 2, 2021).  "If the magnitude of
a corporation's business activities in the forum state
substantially exceeds the magnitude of the corporation's
activities in other places, general jurisdiction may be
appropriate in the forum state."  Lindora, 198 F. Supp. 3d at
1137.

          Stage Nine and SPN argue that, although GlobalTranz is
not incorporated and does not have its principal place of
business in California, its contacts with California are so
continuous and systematic that it should be subject to general
jurisdiction there.  See Daimler, 571 U.S. at 139 n.19.  However,
none of the contacts proffered by Stage Nine or SPN are
sufficient to conclude that GlobalTranz is "at home" in
California.

          Stage Nine first points out that GlobalTranz has been
involved in six cases in California courts as a plaintiff, and
one case in California as a defendant, over the past twelve
years.  (See Pl.'s Opp'n at 5-6.)  While GlobalTranz's presence
as a plaintiff in a handful of other suits "does demonstrate a
kind of 'purposeful availment' similar to that necessary for the
exercise of limited or specific jurisdiction, it does not
establish general jurisdiction because it is neither continuous
nor systematic."  Calvert v. Huckins, 875 F. Supp. 674, 677 (E.D.
Cal. 1995) (Shubb, J.).  GlobalTranz's choice of California as

the forum for suits it has filed against other entities reveals

nothing about the scope or magnitude of its operations in

California, given that, in those other cases, the personal

jurisdiction inquiry would have been focused solely on the

contacts of the parties being sued, not GlobalTranz.  See id.;

Daimler, 571 U.S. at 127.  Indeed, in a declaration filed in

support of GlobalTranz's reply brief, its counsel, Jeff Simmons,

states that in each of the cases cited by Stage Nine where

GlobalTranz is or was a plaintiff, GlobalTranz chose to file suit

in California because the defendant's principal place of business

was located in the state, and thus the court had general personal

jurisdiction over the defendant.  (See Decl. of Jeff Simmons in

Support of Def.'s Reply ("Simmons Decl. ISO Reply") ¶¶ 4-9

(Docket No. 42-1).)

        Nor does GlobalTranz's presence as a defendant in

Boatman v. Ruby Express, Sacramento County Superior Court No.

2019-00261259, indicate that general jurisdiction would be

appropriate in this case.  Stage Nine contends that GlobalTranz's

failure to move to dismiss for lack of personal jurisdiction in

Boatman has effectively conceded any objection to personal

jurisdiction it might have here.  However, Boatman is a personal

injury and property damage case involving a motor vehicle

accident that occurred in Sacramento, California.  (Simmons Decl.

ISO Reply ¶ 10.)  GlobalTranz's assent to the personal

jurisdiction of the Sacramento Superior Court therefore has

little bearing on this case, as personal jurisdiction there

appears to have been based on specific, not general,

jurisdiction.  (See id.)

9

1    Stage Nine and SPN next point out that GlobalTranz has
2    been registered to do business in California since at least 2011,
3    and that it has two California branch offices which were formerly
4    independent freight brokerage and logistic companies before
5    GlobalTranz acquired them in 2019 and 2021, respectively.  (See
6    Decl. of Jeffrey L. Aran in Support of Pl.'s Opp'n ("Aran
7    Decl."), Exs. 2-3 (Docket No. 40-1).)  Beyond merely asserting
8    that GlobalTranz does business in California and that it has two
9    California locations, however, SPN and Stage Nine have failed to
10   provide any evidence showing how much of GlobalTranz's business
11   is conducted in California, how much revenue its California
12   offices are responsible for, what percentage of GlobalTranz's
13   total revenue its California offices comprise, or what level of
14   decisionmaking within the company its California offices are
15   responsible for.  See Lindora, 198 F. Supp. 3d at 1137 ("Outside
16   the traditional bases of general jurisdiction [principal place of
17   business or place of incorporation], this inquiry is a
18   necessarily comparative one, 'call[ing] for an appraisal of a
19   corporation's activities in their entirety, nationwide and
20   worldwide.'" (quoting Daimler, 571 U.S. at 762 n.20)).

21   The only information the court has that would allow it
22   to assess the share of GlobalTranz's total business conducted by
23   its California offices comes from (1) a declaration filed by
24   GlobalTranz's counsel, which states that GlobalTranz's California
25   offices employ just ten individuals, or 0.96% of GlobalTranz's
26   1,034 employees nationwide (Simmons Decl. ISO Reply ¶ 3), and (2)
27   press releases provided by Stage Nine, which indicate that
28   GlobalTranz's California locations are just two of many "offices

1   and locations across North America."  (Aran Decl., Ex. 3.)

2          Even based on this limited information, it is apparent

3   that Stage Nine and SPN have failed to meet their burden of

4   showing that this is an "exceptional case" which would justify

5   the exercise of general personal jurisdiction over a corporation

6   in a state other than its principal place of business or place of

7   incorporation.  See Daimler, 571 U.S. at 139 n.19.  Courts

8   routinely hold that companies which have only a few physical

9   locations in a forum state and which employ only a few dozen or

10  fewer employees in that state are not subject to general

11  jurisdiction where these contacts do not represent a significant

12  part of the corporation's business compared to its business in

13  other states.  In Brown v. Lockheed Martin Corp., 814 F.3d 619,

14  628-31 (2d Cir. 2016), for instance, the Second Circuit found

15  that the contacts of Lockheed Martin--which was registered to do

16  business in Connecticut, operated multiple leased locations, and

17  employed up to 70 employees in the state--fell "well below the

18  high level needed to place the corporation 'essentially at home'

19  in the state" because Lockheed's Connecticut work force and

20  revenue constituted only .05% and .107% of its total,

21  respectively.

22          Similarly, in Williams v. Progressive, No. 17-cv-2282-

23  AJB-BGS, 2019 WL 143241, at *5 (S.D. Cal. Mar. 29, 2019) the

24  Southern District of California held that it could not assert

25  general jurisdiction over the defendant insurer--whose

26  subsidiaries had multiple offices in the state--because the

27  insurer had only written 7.9% of its nationwide insurance

28  premiums in California.  Even in Daimler, the Supreme Court held

1  that the defendant, Daimler AG--the German manufacturer of

2  Mercedez-Benz automobiles, which had multiple offices, continuous

3  operations, and billions of dollars' worth of sales in

4  California--could not be subjected to the personal jurisdiction

5  of California courts because Daimler's California sales accounted

6  for only 2.4% of its worldwide sales.  See Daimler, 571 U.S. at

7  139-40.

8       Stage Nine and SPN have simply failed to provide any

9  evidence showing that GlobalTranz conducts a larger share of its

10 business in California or that its California offices play a

11 larger role in its operations than those of the defendants in the

12 above-cited cases.  See Brown, 814 F.3d at 628-31; Daimler, 571

13 U.S. at 139-40.  Accordingly, the court cannot conclude that

14 GlobalTranz's relatively limited contacts with California are

15 sufficient to subject it to general personal jurisdiction in the

16 state.  See Lindora, 198 F. Supp. 3d at 1137.

17      B.   Specific Jurisdiction

18      "Specific jurisdiction is different [than general

19 jurisdiction]: It covers defendants less intimately connected

20 with a State, but only as to a narrower class of claims."  Ford,

21 141 S. Ct. at 1024.  The contacts needed for this kind of

22 jurisdiction often go by the name 'purposeful availment.'"  Id.

23 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475

24 (1985)).  The defendant "must take 'some act by which [it]

25 purposefully avails itself of the privilege of conducting

26 activities within the forum State.'"  Id. (quoting Hanson v.

27 Deckla, 357 U.S. 235, 253 (1958)).  "The contacts must be the

28 defendant's own choice and not 'random, isolated, or

12

1  fortuitous.'"  Id. (quoting Keeton v. Hustler Magazine, Inc., 465

2  U.S. 770, 774 (1984)).  "They must show that the defendant

3  deliberately 'reached out beyond' its home--by, for example,

4  'exploi[ting] a market' in the forum State or entering a

5  contractual relationship centered there."  Id. (quoting Walden v.

6  Fiore, 571 U.S. 277, 285 (2014)).

7         "Yet even then--because the defendant is not 'at home'—

8  the forum State may exercise jurisdiction in only certain cases."

9  Id.  The plaintiff's claims "must arise out of or relate to the

10  defendant's contacts" with the forum.  Bristol-Myers Squibb, 137

11  S. Ct. at 1780.  "Or put just a bit differently, 'there must be

12  an affiliation between the forum and the underlying controversy,

13  principally, [an] activity or an occurrence that takes place in

14  the forum State and is therefore subject to the State's

15  regulation.'"  Ford, 141 S. Ct. at 1024 (quoting Bristol-Myers

16  Squibb, 137 S. Ct. at 1780).

17         Here, neither Stage Nine nor SPN have provided any

18  evidence that GlobalTranz's California offices were involved in

19  the transportation of the Hall of Heroes exhibition in any way.

20  Though Stage Nine has identified a number of cases in California

21  courts in which GlobalTranz is involved as a party, none of these

22  cases appear to pertain to the events at issue in this lawsuit.

23  See Calvert, 875 F. Supp. at 767 n.5 (holding that defendant's

24  involvement as a party in California suits did not justify the

25  exercise of personal jurisdiction where none of those actions

26  were related to the claims before the court).  Thus, the only

27  potential contact identified by the parties which GlobalTranz has

28  with California is the fact that Stage Nine, a California-based

13

1  corporation, contracted with Rock-It to transport the Hall of
2  Heroes exhibition, who subsequently contracted with Valued
3  Freight, who then contracted with GlobalTranz.  (Compl. ¶¶ 3-4.)

4          In cases in which a party's contact with a forum state
5  arises out of a contract formed with a party who is located in
6  that state, the Supreme Court has noted the "contract with an
7  out-of-state party <u>alone</u> . . . cannot . . . automatically
8  establish sufficient minimum contacts in the other party's home
9  forum."  <u>Burger King</u>, 471 U.S. at 478.  Instead, courts must look
10 to "prior negotiations and contemplated future consequences,
11 along with the terms of the contract and the parties' actual
12 course of dealing" to determine whether the defendant
13 purposefully established minimum contacts with the forum.  <u>Id.</u> at
14 479.

15         In <u>Burger King</u>, the Supreme Court held that a Florida
16 district court had specific personal jurisdiction over a Burger
17 King franchisee, Rudzewicz, in a franchise dispute with the
18 restaurant chain, despite the fact that Rudzewicz resided in
19 Michigan and operated his Burger King franchise there.
20 <u>See id.</u>  According to the Court, although many of Rudzewicz's
21 interactions with Burger King throughout the duration of their
22 commercial relationship were with Burger King's Birmingham,
23 Michigan, office, Rudzewicz "deliberately 'reach[ed] out beyond
24 Michigan and negotiated with a Florida corporation for the
25 purchase of the long-term franchise."  <u>Id.</u> at 479-80.  Record
26 evidence showed that Rudzewicz knew Burger King's operations were
27 conducted and supervised from the Miami headquarters, that all
28 relevant notices and payments had to be sent there, and that any

14

disputes between Rudzewicz and the Michigan office regarding building design, rent computation, development fees, etc. had to be resolved by the Miami office.  Id. at 480-81.  Thus, it could hardly be said that Rudzewicz's affiliation with a Florida corporation was "random, fortuitous, or attenuated."  Id. at 480. Rather, Rudzewicz knew he was affiliating himself with a Florida corporation, and, when he refused to make his contractually-obligated payments in Miami, he "caused foreseeable injuries to the corporation in Florida" and it was "presumptively reasonable for Rudzewicz to be called to account there for such injuries." Id.

Here, by contrast, Stage Nine and SPN have not provided any evidence showing that their claims against GlobalTranz arise out of a contract with a substantial connection to California. Stage Nine does not allege that GlobalTranz contracted or dealt with it directly--the two companies are separated by two intermediaries, with each relationship being subject to a different contract.  The only parties with whom GlobalTranz contracted directly, Valued Freight and SPN, are located in Texas and Illinois, respectively.  (Decl. of Eric P. Wise in Support of Mot. to Dismiss ("Wise Decl."), Exs. F, I (Docket No. 21-8).) Performance of the contracts between GlobalTranz, Valued Freight, and SPN do not involve California in any way, and neither makes any mention of the fact that the customer for whose benefit they were formed is located in California.  (See Decl. of Jeff Simmons in Support of Mot. to Dismiss ("Simmons Decl. ISO Mot. to Dismiss"), Ex. B ("Valued Freight & GlobalTranz Credit Terms Acceptance Certificate") (Docket No. 21-5); id. at Ex. C ("SPN &

1    GlobalTranz Broker-Carrier Agreement") (Docket No. 21-6); <u>id.</u> at

2    Ex. D ("SPN & GlobalTranz Carrier Rate Confirmation").)  In fact,

3    neither Stage Nine nor SPN present any evidence that GlobalTranz

4    was aware of Stage Nine's identity as the consignor of the Hall

5    of Heroes exhibition, let alone that Stage Nine is headquartered

6    in California.  Thus, unlike in <u>Burger King</u>, the evidence

7    presented does not establish that GlobalTranz could have foreseen

8    that failure to deliver the Hall of Heroes exhibition would

9    result in injury to Stage Nine in California or in Stage Nine's

10   haling of GlobalTranz into a California court.  <u>See</u> <u>Burger King</u>,

11   471 U.S. at 480.

12        For similar reasons, Stage Nine's argument that the

13   2017 Agreement and the agreement formed between Rock-It and

14   valued Freight contain choice of law clauses indicating that

15   California law should govern any disputes is also unavailing.

16   Neither SPN nor Stage Nine have provided any evidence indicating

17   that GlobalTranz was aware of the existence of the 2017 Agreement

18   or the agreement between Rock-It and Valued Freight, or that

19   these contracts contained California choice of law clauses.[2]

20        [2]   Nor does the 2017 Agreement's forum selection clause
     constitute a consent to personal jurisdiction over GlobalTranz.
21   <u>See</u> <u>Nat'l Equip. Rental, Ltd. v. Szukhent</u>, 375 U.S. 311, 316
     (1964) (indicating that parties may agree in advance to submit to
22   the jurisdiction of a given court via contract).  While parties
     to a contract may enforce a forum selection clause against non-
23   parties "where 'the alleged conduct of the non-part[y] is . . .
     closely related to the contractual relationship,'" <u>White Knight</u>
24   <u>Yacht LLC v. Certain Lloyds at Lloyd's London</u>, 407 F. Supp. 3d
     931, 947 (S.D. Cal. 2019) (citing <u>Manetti-Farrow, Inc. v. Gucci</u>
25   <u>Am.</u>, 858 F.2d 509, 514 n.5 (9th Cir. 1988), the forum selection
     clause here specifies that any lawsuit arising out the
26   performance of the agreement must be filed in Los Angeles,
     California.  (<u>See</u> 2017 Agreement ¶ 4b.)  Thus, even if
27   GlobalTranz's conduct were sufficiently "closely related" to the
28

1     The court therefore concludes that Stage Nine and SPN's

2  claims against GlobalTranz do not arise out of or relate to any

3  contacts GlobalTranz has with California.  <u>See</u> <u>id.</u>  Accordingly,

4  the court may not assert specific personal jurisdiction over

5  GlobalTranz.  Because the court has also found that GlobalTranz

6  is not subject to general personal jurisdiction in California, it

7  must dismiss Stage Nine and SPN's claims against GlobalTranz for

8  lack of personal jurisdiction.[3]

9     IT IS THEREFORE ORDERED THAT GlobalTranz's motion to

10  dismiss be, and the same hereby is, GRANTED.  Stage Nine's claims

11  and SPN's cross-claims against GlobalTranz are hereby DISMISSED

12  without prejudice to refiling in another forum which does have

13  ///

14  ///

15  _____

16  contractual relationship between Stage Nine and Rock-It to
   enforce the forum-selection clause against GlobalTranz, because
   the clause specifies that any suit must be brought in Los Angeles

17  County, enforcement of the clause would not permit Stage Nine to
   hale GlobalTranz into court in Sacramento County or the Eastern

18  District of California.

19

20     [3]  Stage Nine has additionally argued that dismissal of
   its claims against GlobalTranz for lack of personal jurisdiction
   would be unfair and inefficient because it would require Stage

21  Nine to litigate its claims concerning the loss of the Hall of
   Heroes exhibition in multiple fora.  Putting aside the fact that

22  binding Supreme Court precedent dictates that the court should
   only consider factors such as judicial efficiency and fundamental

23  fairness after it has identified that the defendant possesses
   certain minimum contacts with the forum state, <u>see Burger King</u>,

24  471 U.S. at 476-77 ("Once it has been decided that a defendant
   purposefully established minimum contacts within the forum State,

25  these contacts may be considered in light of other factors to
   determine whether the assertion of personal jurisdiction would

26  comport with 'fair play and substantial justice.'"), Stage Nine
   has not addressed why it could not have brought its claims

27  against defendants in a single case in Florida.

28

17

1   personal jurisdiction over GlobalTranz.

2

3   Dated:  August 11, 2021

WILLIAM B. SHUBB
4   UNITED STATES DISTRICT JUDGE